UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IZZO GOLF, INC.,

                        Plaintiff,

                                                    04-CV-6253T
                                                    **DECISION**
                v.                                  **and ORDER**

TAYLOR MADE GOLF COMPANY, INC.,
d/b/a TAYLOR MADE-ADIDAS GOLF COMPANY,

                Defendant.
_____

TAYLOR MADE GOLF COMPANY, INC.,
d/b/a TAYLOR MADE-ADIDAS GOLF COMPANY,

                Counter-Claimant,

                v.

IZZO GOLF, INC.,

                Counter-Defendant.
_____

## INTRODUCTION

Plaintiff Izzo Golf, Inc., ("Izzo") brings this action pursuant to federal patent law, (codified at 35 U.S.C. § 100 et. seq.), claiming that defendant Taylor Made Golf Company Inc., ("Taylor Made") has infringed Izzo's United States Patent No. 5,042,704 (filed March 23, 1990)(hereinafter "the '704 patent"), by manufacturing and selling golf bags with straps for carrying the bags that infringe upon the '704 patent. The '704 patent, entitled "Dual Strap Carrying System for Golf Bags" generally discloses a strap designed to evenly distribute the weight of a golf bag across

both shoulders of the person carrying the bag.  The strap system can also be used to carry a golf bag across only one shoulder.

Pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370, 372, ("Markman"), the parties request that the court construe the disputed claim terms of the '704 patent.[1]  The following constitutes my construction of the claim terms in dispute.

## DISCUSSION

In 1996, the United States Supreme Court held in Markman v. Westview Instruments, Inc., 517 U.S. 370, 372, that "construction of a patent, including terms of art within its claim, is exclusively within the province of the court."  Because the meaning of claim terms is often "the central issue of patent litigation . . . ." and because "most aspects of trial hing[e] on this determination . . . a conscientious court will generally endeavor to make this ruling before trial."  Loral Fairchild Corporation v. Victor Company of Japan, Ltd., 911 F.Supp. 76, 79 (E.D.N.Y. 1996) (Rader, J. sitting by designation)(citing Markman v. Westview Instr., Inc., 52 F.3d 967 (Fed.Cir.1995)(internal quotation omitted)).

---

[1] This action was originally assigned to the Hon. David G. Larimer of this court. The parties fully briefed the claim construction issues while proceeding before Judge Larimer. Thereafter, the case was reassigned to the Honorable Charles J. Siragusa of this court.  Although Judge Siragusa scheduled a Markman hearing, no hearing was conducted because the case was reassigned to this court.  Having reviewed the parties submissions, I find the issue of the disputed claim terms has been fully and comprehensively briefed, and argument on the issue is not necessary.

In determining how the terms of a claim are to be construed, "the court should look first to . . . intrinsic evidence . . . i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)(citing Markman, 52 F.3d at 979). "Such intrinsic evidence is the most significant source of legally operative meaning of disputed claim language." Vitronics, 90 F.3d at 1582. "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term[,]" and in such circumstances, reliance on extrinsic evidence, such as expert testimony is "improper." Vitronics, 90 F.3d at 1583.

In considering the intrinsic evidence, the court looks first to the words of the claims, including the claims not asserted, to define the scope of the patented invention. Vitronics, 90 F.3d at 1582. The words in the claim are given their ordinary and customary meaning, unless the patentee chooses to define the words in a specific manner. Vitronics, 90 F.3d at 1582. If the patentee chooses to be his or her own lexicographer, the specified definitions assigned to particular words or terms must be found either in the specification or the file history. Vitronics, 90 F.3d at 1582. Accordingly, it is always necessary to review the specification to determine if any specialized meanings have been given to terms used in the patent. Vitronics, 90 F.3d at 1582.

Finally, with respect to intrinsic evidence, the prosecution history of the patent may often be of "critical significance" in defining claim terms. <u>Vitronics</u>, 90 F.3d at 1582.  The prosecution history often contains express representations made by the applicant regarding the scope or limitations of the claims, and therefore is a valuable resource in determining the meanings of words used in the claims. <u>Vitronics</u>, 90 F.3d at 1582.

## <u>CONSTRUCTION OF THE DISPUTED CLAIM TERMS OF THE '704 PATENT</u>

The '704 contains fourteen claims, three of which (Claims 1, 8, and 14) are independent.  The independent claims are set forth below, with the disputed claim terms highlighted.

Claim 1 of the '704 patent provides:

> In a golf bag adapted to receive a set of golf clubs which each have a club head and an elongated shaft, said golf bag being in the form of an elongated tube including a surrounding <u>sidewall</u>, a closed end and an open end whereby the shafts of said golf clubs may be longitudinally inserted into said golf bag through the open end so that said golf clubs are stored in a position with the club heads projecting out of said golf bag proximate the open end, the improvement comprising a strap assembly adapted to permit a person to carry said golf bag on either or both shoulders, said strap assembly including a <u>single strap</u> comprising a first strap portion including a first central pad, a first strap portion first end <u>attached</u> on one end of said first central pad and a first strap portion second end <u>attached</u> on another end of said first central pad whereby said first strap portion has a first strap first end <u>secured to said golf bag</u> at a first location proximate said open end

4

and a first strap portion second end <u>secured to said golf bag</u> at a second location <u>axially spaced</u> from the first location so that said first strap portion defines a first strap portion opening, and including a second strap portion including a second central pad, a second strap portion first end <u>attached</u> on one end of said second central pad and a second strap portion second end attached on another end of said second central pad whereby said second strap portion has a second strap portion first end <u>secured to said golf bag proximate the second location</u> and having a second strap portion second end <u>secured to said golf bag</u> at a third location <u>axially spaced</u> from the second location between the second location and said closed end to define a second strap portion opening, said first and second strap portions being sized so that one arm of the person can be inserted through the first strap portion opening and another arm of the person can be inserted through the second strap portion opening whereby said golf bag may be supported by said first strap portion extending across one shoulder of the person and by said second strap portion extending across another shoulder of the person.

Claim 8 of the '704 patent discloses:

A golf bag adapted to receive a set of golf clubs for transport by a person, comprising:

an elongated tubular body having a longitudinal axis and including a surrounding sidewall, a closed end and an open end such that golf clubs may be inserted into said tubular body through said open end;

a shoulder strap assembly including first and second shoulder strap elements, said first strap element having a first strap end portion and a first strap element free end opposite said first strap end portion and said second strap element having a second strap element end portion and a second strap element free end opposite said first end portion;

first mounting means on said golf bag at a first location, said first mounting means connected to said first strap element free end for securing said first strap free end to said golf bag at the first location;

second mounting means on said golf bag at a second location axially spaced from the first location, said second mounting means connected to said first and second strap end portions for securing said end portions to said golf bag at the second location;

third mounting means on said golf bag at a third location axially spaced from the second location between the second location and said closed end wherein, said third mounting means secures said second strap element free end to said golf bag at the third location; and

said first and second shoulder strap elements sized to form first and second strap openings respectively when secured whereby the person may selectively carry said golf bag across one shoulder with only said first strap element and selectively carry said golf bag with both shoulders in a fully supported state by inserting his/her arms respectively through the first and second strap openings so that said golf bag is suspended from and supported by both shoulders with said golf bag oriented transversely across the back of the person.

Claim 14 of the '704 patent discloses:

In a golf bag to be carried by a person, a golf bag having an elongated enclosure including a surrounding sidewall, a closed end and an open end whereby golf clubs may be inserted lengthwise into said golf bag through the open end, the improvement comprising:

a shoulder strap assembly disposed externally of said sidewall including first and second strap members, each of said strap members having opposite ends;

first and second securing means for securing

6

each of said opposite ends of said first strap member to longitudinally spaced locations on said sidewall including a first location proximate said open end and a second location longitudinally spaced from said first location whereby said first strap member defines a first strap opening through which one arm of the person can be inserted; and

<u>third and fourth securing means</u> for securing each of said opposite ends of said second strap member to longitudinally spaced locations on said sidewall to define a second strap opening that another arm of the person can be inserted through said second strap opening whereby said golf bag can be selectively supported on one shoulder by said first strap member to incline downwardly across the back of the person carrying said golf bag and can be selectively supported on both shoulders by said first and second strap members with said golf bag extending transversely across the back of the person carrying said golf bag.

I discuss the disputed claim terms <u>seriatim</u>.

<u>     1.   "Sidewall"</u>

Claim 1 of the '704 patent describes the golf bag disclosed therein as "being in the form of an elongated tube including a surrounding sidewall, [with] a closed end and an open end . . . ." '704 patent at Column 15, lines 8-10.  Izzo contends that the term "sidewall" should be defined as "the wall or side portion surrounding the elongated tube of the golf bag."  Taylor Made argues that the term is not ambiguous, and requires no formal construction.  Defendant further asserts that if the court were to construe the term, the court should adopt the plain dictionary meaning of sidewall, to wit: "a wall forming the side of

7

something."  Finally, Taylor Made urges the court to reject the addition of the term "side portion" to the definition of the sidewall, as there is no support in the patent for the inclusion of that term, and its inclusion would only render the term "sidewall" ambiguous.

The term "sidewall" is not defined in the '704 patent.  It is clear, however, from the context of the patent claim that the term "sidewall" describes the structural member of the golf bag that forms the sides of the bag, and which defines the elongated shape of the bag.  Accordingly, I construe the term "sidewall" as the structural member of the golf bag that forms the sides of the bag, and defines the elongated shape of the bag.  I expressly decline to expand the definition of "sidewall" to include the ambiguous term "side portion surrounding the elongated tube of the golf bag." There is no support in the '704 patent for such an expansive definition of the term.

2.   "Single Strap"

Claim 1 of the '704 patent discloses in part:

> a strap assembly adapted to permit a person to
> carry [a] golf bag on either or both
> shoulders, said strap assembly including a
> single strap comprising a first strap portion
> including . . . [a] first end . . . and a . .
> . second end . . .  and including a second
> strap portion including a . . . second strap
> portion first end . . . and a second strap
> portion second end . . . whereby said golf bag
> may be supported by said first strap portion
> extending across one shoulder of the person

> and by said second strap portion extending
> across another shoulder of the person.

'704 patent at Column 15, lines 14-45 (emphasis added)

Taylor Made asks the court to define the term "single strap" as "a strap that is continuous along its entire length, and not designed to be separated into distinct pieces." Izzo argues that the term "single strap" should be defined as "a strap consisting of various portions or sections used as part of a strap assembly designed to allow a user to carry a golf bag."

The '704 patent is entitled "Dual Strap Carrying System for Golf Bags." Accordingly, at first blush, a claim disclosing a strap assembly including a "single strap" seems incongruous with invention purportedly claimed. However, it is clear from the claims, specification, and illustrations of the '704 patent that a single strap can be configured in such a way as to provide two straps upon which the bag may be carried. Indeed, the ability to configure a single strap into a position in which it can allow the user of the golf bag to carry it over either one or both shoulders represents much of the novelty of the '704 patent.

As can be seen in Figure 2 of the '704 patent, a single strap extends from the top end of the bag to the closed end of the bag. The single strap, however, at or near its center point, is secured to a mounting ring, which ring is in turn mounted to the golf bag. Accordingly, two straps (one for each shoulder) are effectively formed from the single strap. As a result, the claim of a "single

strap" as found in Claim 1 is neither inconsistent nor incompatible with the disclosure of "a dual strap carrying system for golf bags."

Taylor Made seeks to limit the "single strap" claimed in the '704 patent to a strap that is "continuous" along its entire length, and is not designed "to be separated into distinct pieces." Such limitations, however, are unsupported by the patent language.

Claim 1 of the '704 patent originally claimed two straps, and was rejected in light of U.S. Patent 42,853,111 (hereinafter the "Williams" patent), which disclosed two distinct straps that were attached to a golf bag for the purpose of allowing the bag to be carried transversely across the user's back. Claim 1 was amended, at the patent examiner's suggestion, to claim a "single strap" with two strap portions formed by the single strap. Accordingly, I find that the single strap described in Claim 1 must be a single strap that is configured in such a manner as to create two separate strap openings[2], one opening for each arm of the user.

That there may only be one strap, however, does not limit the strap to being a "continuous" strap. An item that is "continuous"

---

[2] In <u>Izzo Golf v. King Par</u>, 02-CV-6012, the term "strap opening" was defined by the Honorable Charles J. Siragusa of this Court as "an opening for the arm of a user, formed by a section of strap as it extends from one securing point to another." Decision and Order dated July 26, 2006, at p. 15. The parties to this action have not identified the term "strap opening" as a disputed term, and accordingly, have not urged a specific construction of that term.  Because I concur with Judge Siragusa's construction of that term, I adopt it for purposes of this case.

is one that is "[m]arked by uninterrupted extension in space, time, or sequence." Webster's Ninth New Collegiate Dictionary 283 (1985). Claim 1 of the '704 patent contains no limitation suggesting that the single strap be "uninterrupted." Rather, the strap may be comprised of separate members, including members that may be formed of different materials, joined together so that in combination, the separate members act as a single strap. What is prohibited by the "single strap" limitation of Claim 1 is a strap that is designed to be separated and used separately as two individual straps. Such a strap would be precisely the strap that was rejected by the examiner as unpatentable in light of the Williams patent.

Accordingly, I find that the limitation of a "single strap" as found in Claim 1 of the '704 patent requires a single strap that is configured in such a manner as to create two separate strap openings, one opening for each arm of the user. The strap may be comprised of different elements, but the strap may not be designed to be used as two separate, independent straps.

3.   "Attached"

Claim 1 of the '704 patent discloses a strap system in which strap ends are "attached" to straps. Specifically, Claim 1 discloses in relevant part:

> [a] strap assembly including a single strap
> comprising a first strap portion including a
> first central pad, a first strap portion first
> end <u>attached</u> on one end of said first central

> pad and a first strap portion second end
> <u>attached</u> on another end of said first central
> pad, . . . and including a second strap
> portion including a second central pad, a
> second strap portion first end <u>attached</u> on one
> end of said second central pad and a second
> strap portion second end <u>attached</u> on another
> end of said second central pad . . . .

'704 patent at Column 15, lines 15-31 (emphasis added).

The term "attached" is not defined in the specification of the '704 patent, and there is no indication that the inventor intended to give the term a special meaning. Accordingly, I find that the term "attached" is to be afforded its ordinary meaning of "affixed to" or similarly , "connected to", or "fastened to." <u>See</u> American Heritage Dictionary, at p. 84 (1981). Such an attachment may either be permanent or removable. While Taylor Made urges the court to limit the term to items that are attached <u>directly</u> to one another, support for such a limitation is not found in the specification or claims of the '704 patent, and therefore I decline to adopt such a limitation.

   4.   "Secured to Said Golf Bag"

Claim 1 of the '704 patent discloses a strap in which: the "first end" of the "first strap" is "<u>secured to said golf bag</u> at a first location proximate said open end"; the "second end" of the "first strap" is <u>secured to said golf bag</u> at a second location"; the "first end" of a "second strap portion" is "<u>secured to said golf bag</u> proximate the second location"; and the "second end" of the "second strap portion" is "<u>secured to said golf bag</u> at a third

12

location . . . ." '704 patent at Column 15, lines 21-31 (emphasis added).

The term "secured to said golf bag" is not defined in the '704 patent.  Both parties agree that the term "secured to" requires that the strap to be fastened or attached to the golf bag.  Indeed, such a definition comports with Judge Sirgusa's construction of the term "secured to said golf bag" in Izzo Golf v. King Par, in which Judge Siragusa stated that the term describes "a strap end [that] is attached to the outer surface of the golf bag by a securing means." Izzo Golf v. King Par, 02CV-6012 (W.D.N.Y., July 26, 2006) at p. 15.

The parties disagree, however, as to whether or not the item being "secured" to the bag must be secured directly (as urged by Taylor Made) or may be secured either directly or indirectly (as urged by Izzo).  I decline to choose between the alternatives presented by the parties, and adopt Judge Siragusa's construction which states simply that the term "secured to said golf bag" refers to an object that is attached to the outer surface of the golf bag by a securing means.

Claim 1 of the '704 patent is silent on the issue of whether an object may be directly or indirectly secured to the golf bag.  Rather than add a limitation to Claim 1 that is not present, or expand the claim to include a variation that was not properly claimed, I adopt Judge Siragusa's construction of the term "secured

13

to said golf bag". Under Judge Siragusa's construction, the term "secured to said golf bag" is limited to an object that is secured to the golf bag using a "securing means." This construction comports with what was claimed in Claim 1 and disclosed in the specification, and avoids introducing terms such as "directly" or "indirectly" (which are not found in the specification) into the definition. Under the language of the '704 patent, as long as the strap is attached to the golf bag via a securing means, the distinction of whether the attachment is direct or indirect is irrelevant. Accordingly, such a limitation will not be incorporated into the court's construction of the term.

     5.  <u>"Axially Spaced"</u>

Claim 1 of the '704 patent provides in relevant part that the "first strap first end" of the "first strap portion" is secured to the golf bag:

> at a first location proximate [the] open end [of the bag] and a first strap portion second end secured to said golf bag at a second location <u>axially spaced</u> from the first location so that said first strap portion defines a first strap portion opening . . . and . . . a second strap portion . . . first end secured to said golf bag proximate the second location and having a second strap portion second end secured to said golf bag at a third location <u>axially spaced</u> from the second location between the second location and [the] closed end [of the bag] to define a second strap portion opening . . . .

'704 patent at Column 15, lines 22-38 (emphasis added).

14

The parties urge contrasting constructions of the term "axially spaced." Taylor Made contends that the term should be defined as "spaced some distance from another location on a single, imaginary straight line or axis." Izzo argues that the term should be defined as "spaced along an axis, not in a line on an axis." Izzo further clarifies that "the spacing along the axis does not preclude spacing in other directions, such as circumferentially.

I find that the term "axially spaced" requires that the points at which the strap ends are secured to the bag be spaced along a vertical axis. While the securing points need not be aligned perfectly along the axis, the points must be in close proximity to the axis.[3]

That the axis is vertical, and not horizontal, (or circumferential as suggested by the plaintiff) is demonstrated by the specification, which provides that "the invention . . . broadly includes a pair of straps which are connected to and oriented longitudinally along a golf bag to define an attachment axis." '704 Patent at Cl. 5, lns 37-41. Further, there is no support in the '704 patent for plaintiff's contention that the securing points may be circumferentially spaced. Indeed, Claim 1 of the '704

---

[3] I note that in <u>Izzo v. King Par</u>, Judge Siragusa determined that the term "axially spaced" referred to objects that were "located on, or around, or in the direction of an axis." <u>Izzo Golf v. King Par</u>, 02CV-6012 (W.D.N.Y., July 26, 2006) at p. 11. Although I do not explicitly adopt this language, I find that his construction is consistent with my construction here, and that there is no conflict between these definitions.

patent had been disallowed by the patent examiner in light of the Williams patent, which claimed straps that were circumferentially spaced.  However, following the rejection of Claim 1, the patentee distinguished Claim 1 of the '704 patent from the Williams patent by explaining that straps of the Williams patent were "secured at locations circumferentially spaced from one another, and not axially spaced from one another as positively recited in these claims."  See Defendant's Opposition Brief on Claim Construction at p. 10. (emphasis added).  Accordingly, I find that the term axially spaced requires the securing points to be spaced longitudinally from one another along a vertical axis.

This construction, however, does not require that the securing points be located upon a precise vertical axis, with no deviation from that axis.  Instead, securing points that are substantially placed along the attachment axis will be considered axially spaced.

6.   "Proximate the Second Location"

Claim 1 of the '704 Patent provides that the "first end" of the "second strap portion" be "secured to [the] golf bag proximate the second location . . . ."  '704 patent at Column 15, lines 32-33 (emphasis added).  The "second location" is the location at which the "second end" of the "first strap portion" is secured to the golf bag.  '704 patent at Column 15, lines 23-25.

Taylor Made urges the court to construe the term "proximate the second location" as meaning "at or immediately adjacent to the

16

second location." Although Izzo does not propose a specific construction of the term, plaintiff does object to defendant's proposed construction as unduly limiting the claim term. Specifically, Izzo contends that there is no reason to limit the term "proximate the second location" to mean "immediately adjacent" to the second location.

I find that the term "proximate the second location" means "at or near" the second location. There is no language in the '704 patent suggesting that the term "proximate" has a special meaning assigned to it by the inventor, and the plain meaning of the word "proximate" is "immediately preceding or following", or alternatively "very near." Webster's Ninth New Collegiate Dictionary 9493 (1985). Accordingly, I find that this claim term requires that the first end of the second strap portion be secured to the bag at a location that is at or near the location at which the second end of the first strap portion is attached. Because the second end of the first strap portion and the first end of the second strap portion are part of a single strap, and because these strap ends are adjacent to one another, I find that they must be attached to the bag in locations that are at the same point or very near one another.

7. <u>First Mounting Means</u>, <u>Second Mounting Means</u>, <u>Third Mounting Means</u>

Claim 8 of the '704 Patent discloses a golf bag which utilizes a "first mounting means" located on the bag at a first location for

17

the purpose of securing one end of a first strap to the bag; a "second mounting means" located on the bag in a second location that is axially spaced from the first location, and which secures the other end of the first strap, and one end of the second strap to the bag; and a "third mounting means" located on the bag at a third location that is axially spaced from the second location, and which secures the other end of the second strap to the bag.  '704 patent at Column 16, lines 23-32.

Plaintiff contends that the terms "first mounting means", "second mounting means", and "third mounting means" should all be similarly construed as "a means for securing the strap element to the golf bag either directly or indirectly, comprising rings, clips, buckles, straps and/or loops, or functionally equivalent structures."

Taylor Made proposes individual constructions for each of the "mounting means" claim terms.  Taylor Made proposes that the "first mounting means be defined as:

> (1) A mounting ring (a) slidably attached to a circumferential mounting strap secured to the sidewall, or (b) directly attached to a loop riveted to the sidewall; plus (2) a clip attached to the end of the strap and configured to be releasably attachable to the mounting ring; and equivalents thereof.

According to the defendant, the term "second mounting means should be defined as

> (1) A mounting ring (a) slidably mounted to the handle of the golf bag by a short

18

releasable strap, or (b) slidably attached to
the sidewall by a longitudinal channel piece;
plus (2) stitching that secures the first and
second strap end portions to each other; plus
(3) a clip attached to the first and second
strap end portions and configured to be
releasably attachable to the mounting ring;
and equivalents thereof.

Finally, Taylor made contends that the term "third mounting
means" should be construed as:

(1) A mounting ring (a) slidably attached to a
circumferential mounting strap secured to the
sidewall, (b) directly attached to a loop
riveted to the sidewall, or (c) slidably
attached to the sidewall by a longitudinal
channel piece; or (2) a longitudinal rib with
axially spaced openings secured to the
sidewall; plus (3) a clip attached to the end
of the strap and configured to be releasably
attachable to the mounting ring or an opening
in the rib; and equivalents thereof.

For the reasons set forth below, I hold that the terms "first
mounting means", "second mounting means", and "third mounting
means" refer to any means disclosed in the specification for
securing the strap elements of the claim to the claimed golf bag.
The means can include rings, clips, buckles, straps, loops, or any
equivalents thereof.

The use of the term "mounting means" in claim 8 suggests that
the claimed element is a "means-plus-function" claim. Federal
patent law, codified at 35 U.S.C. § 112 ¶ 6, provides that: "[a]n
element in a claim for a combination may be expressed as a means or
step for performing a specified function without the recital of

19

structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C.A. § 112 (1984). The Federal Circuit has held that where a patentee utilizes § 112 ¶ 6 to recite a claim, the claim is a "means-plus-function" claim, and is to be given a construction limited to only those structures and their equivalents disclosed in the specification that perform the recited function. Signtech USA, Ltd. v. Vutek, Inc., 174 F.3d _1352, 1356,(Fed. Cir., 1999).

According to the Federal Circuit, "[t]he question of whether or not a claim element triggers section 112(6) is ordinarily not a difficult one." Greenberg v. Ethicon Endo-surgery, Inc., 91 F.3d 1580, 1583 (Fed. Cir. 1996). "Specifically, if the word "means" appears in a claim element in combination with a function, it is presumed to be a means-plus-function element to which § 112, ¶ 6 applies." Al-site Corp. v. VSI International, Inc., 174 F.3d 1308, 1318,(Fed. Cir., 1999)(citing Sage Products, Inc. v. Devon Industries, Inc., 126 F.3d 1420, 1427 (Fed. Cir. 1997); Greenberg, 91 F.3d at 1583). This presumption is rebuttable, and may be overcome "if the evidence intrinsic to the patent and any relevant extrinsic evidence so warrant." Personalized Media Communications, Inc. v. International Trade Commission, 161 F.3d 696, 704 (Fed. Cir. 1998)(citations omitted).

For a claim to be considered a means-plus-function claim, the claim must recite a function, but must fail to recite sufficient structure, material, or acts to perform entirely that function. See Sage Products, 126 F.3d at 1427-28.  Accordingly, if a claim "uses the word 'means,' but specifies no corresponding function for the word 'means,' it does not implicate section 112."  Sage Products, 126 F.3d at 1427.  Similarly, a claim which recites a function, "but then goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function . . . is not in means-plus-function format." Sage Products, 126 F.3d 1427-28.  Once a claim is determined to be a means-plus-function claim, the court must refer to the specification to determine and define the structure corresponding to the claimed function.  Sage Products, 126 F.3d at 1428.

I find that the terms "first mounting means", "second mounting means", and "third mounting means" are means-plus-function claims, with the "function" being that of securing the strap to the bag. Because the claim is a means-plus-function claim, the Claim is limited to those structures that are disclosed in the specification which accomplish the function of securing, and their equivalents. In this case, the specification discloses numerous structures that can be used to secure the strap element to the bag, including:

21

rings[4], clips[5], buckles[6], straps[7], loops[8].  Because those elements are specifically disclosed, they along with their equivalents, constitute "mounting means.

I decline to import the additional limitations on the claims as proposed by the defendant.  For example, there is no basis for restricting the first mounting means to a ring that is slidably mounted to the handle of a golf bag by a short releasable strap." While that configuration may constitute a preferred embodiment, it need not constitute the only embodiment.

8.  <u>First and Second Securing Means</u>, <u>Third and Fourth Securing Means</u>

Claim 14 of the '704 patent discloses a strap system which utilizes "first and second securing means" to secure one strap to the golf bag, and "third and fourth securing means" to secure a

---

[4] <u>See</u> <u>e.g.</u> '704 patent at Column 4, lines 17-21 (describing the use of a "mounting ring").

[5] <u>See</u> <u>e.g.</u> '704 patent at Column 13, lines 43-45. (describing how the end of the second strap is connected by means of a swivel clip directly to a buckle).

[6] <u>See</u> <u>e.g.</u> '704 patent at Column 13, lines 43-45 (describing how the end of the second strap is connected by means of a swivel clip directly to a buckle).

[7] <u>See</u> <u>e.g.</u> '704 patent at Column 6, lines 29-30 (describing a first circumferential mounting strap).

[8] <u>See</u> <u>e.g.</u> '704 patent at Column 12, lines 40-43 ("A first attachment structure is provided for a golf bag in the form of a loop. . . ."

second strap to the bag.  '704 patent at Column 17, line 19 - Column 18, line 7.

For the reasons set forth in Section 7 above, I find that the "securing means" as set forth in Claim 14 refer to any means disclosed in the specification for securing the strap elements of the claim to the claimed golf bag.  The means can include rings, clips, buckles, straps, loops, or any equivalents thereof.

### CONCLUSION

For the reasons stated herein, I construe the disputed claim terms of the '704 patent as set forth above.


ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
_____
    MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         June 23, 2008